**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| Nathan Battle, | ) | |
| | ) | C/A No. 9:19-cv-1739-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| South Carolina Department of | ) | |
| Corrections; Warden Cecilia Reynolds, | ) | |
| *individually and in her official capacity* | ) | |
| *as Warden of Lee Correctional Institution*; | ) | |
| Correctional Officer Major Bernadette | ) | |
| Richardson, *individually and in her official* | ) | |
| *capacity as an employee of South Carolina* | ) | |
| *Department of Corrections*; Correctional | ) | |
| Officer Angela Leatherwood, *individually* | ) | |
| *and in her official capacity as an employee* | ) | |
| *of South Carolina Department of* | ) | |
| *Corrections*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Nathan Battle ("Battle") originally brought this action against the above-named

Defendants in the Lee County Court of Common Pleas pursuant to 42 U.S.C. § 1983 and the South

Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 to 15-78-220. (ECF No. 1-1).

Defendants subsequently removed the action to federal court. (ECF No. 1). Now, the only

remaining defendants in this action are the South Carolina Department of Corrections ("SCDC")

and Correctional Officer Angela Leatherwood ("Sergeant Leatherwood"), who was sued both

individually and in her official capacity as an employee of SCDC.[1] In accordance with 28 U.S.C.

§ 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this matter was referred to a magistrate

judge for all pretrial proceedings. This matter is currently before the court on the magistrate judge's

---

[1] *See* (ECF No. 42) (stipulation dismissing Warden Cecilia Reynolds and Major Bernadette Richardson as parties to this action).

Report and Recommendation ("Report") (ECF No. 61) recommending that the court grant Defendants' motion for summary judgment (ECF No. 45) as to Battle's federal claims for failure to exhaust administrative remedies.  Alternatively, the magistrate judge recommended, if the court concluded that Battle had exhausted his remedies and reached the merits of Battle's § 1983 failure to protect claim, that Defendants' motion for summary judgment be denied. (ECF No. 61 at 18–19, 26–33). As to Battle's state law claims against SCDC, the magistrate judge recommended that, should the court dismiss the federal claims, the court decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and remand the state law claims to state court. *Id*. at 17. Alternatively, the magistrate judge recommended that the court deny Defendants' summary judgment motion as the Battle's state law claims. *Id*. at 36.

## I. Background

### A. Facts

This action arises out of an alleged inmate-on-inmate assault occurring on July 15, 2017, in the F-2 housing unit at Lee Correctional Institution ("LCI") where Battle was incarcerated during the relevant time period. (ECF No. 1-1 at 8–10). On that day, Sergeant Leatherwood was the only correctional officer assigned to the entire unit where Battle was housed. (ECF No. 51-1 at 6).  Battle's unit consisted of two wings connected by a sallyport-type hallway and housed a maximum of 256 inmates. (ECF No. 51-6 at 98–99). Each wing had two tiers, each with cells, and a day room. *Id*. at 99. According to Sergeant Leatherwood, she typically performed a security check of both wings approximately once an hour. (ECF No. 51-1 at 5). Sergeant Leatherwood was not aware of any SCDC policy or post order prohibiting a wing from being left unattended. *Id*. at 4. Indeed, in light of the two-wing design of the unit, a single correctional officer assigned to monitor both wings of a housing unit at LCI, as Sergeant Leatherwood was in this case, would

2

necessarily be completely absent from one wing while conducting a security check of the other wing. This less-than-ideal situation is not uncommon at LCI, and "[h]aving a total of between one and two staff assigned to a 250-bed housing unit which contains limited to no electronic surveillance support . . . creates an environment where the perceived opportunity to commit an assault can initially go undetected." (ECF No. 51-6 at 105). Sergeant Leatherwood acknowledged the requirement that the wing doors remain locked except during "controlled movement[s]." (ECF No. 51-1 at 5).

Battle asserts that he was stabbed and beaten by five inmate-members of the Bloods street gang and subsequently was taken to a hospital for treatment of his wounds. (ECF No. 54-1 at 138–39). In his deposition, Battle testified that shortly before the attack, he informed Sergeant Leatherwood that "something ain't right" and that "something [was] about to happen" but that Sergeant Leatherwood dismissed his concerns. *Id*. at 113. Battle sensed something was amiss based on an encounter he had with his cellmate—also a Bloods affiliate—earlier in the day when the cellmate told him to leave the cell because he did not bathe sufficiently. *Id*. at 111. Because Battle had washed recently, he concluded "the situation [was] about something else," although he could not "really put [his] hand on the situation" at the time. *Id*. Battle determined that his cellmate was attempting to create "an excuse to try to start something with me." *Id*.

Concerned, Battle decided to tell Sergeant Leatherwood, the only correctional officer assigned to the F-2 unit that day, that there was potential trouble brewing. Battle found Sergeant Leatherwood in the sallyport between the two wings of his housing unit. *Id.* at 103, 114–15. Battle testified that Sergeant Leatherwood had not appeared on his wing all day, remaining instead in the sallyport, where visibility into either wing was limited. *Id*. at 114–15. According to Battle, he and Sergeant Leatherwood had the following exchange:

Q. What did you tell Sergeant Leatherwood?

A. I told her that something ain't right, I feel uncomfortable, like I feel . . . that something about to happen and she was like what you think going to happen and I was like I feel like something about to happen and that's when she just was like, well, if you ain't trying to tell me what about to happen, just go ahead and get back on the wing . . . ain't nothing wrong with you.

Q. Did she ask you why you thought something was going to happen?

A. No . . . she [did not] ask [any] of that. She just was like just go back on the wing. . . . [S]he thought I was playing, because that's what . . . most people [do] with the COs . . . .

. . .

Q. Did you tell her what your roommate had said?

A. No, I [did not] tell her what he said. All I told her was I feel like something ain't right. That's all I told her and that's when she told me well just go back on the wing and whatever happen . . . .

*Id*. at 113–14. Battle recounted this exchange to his fellow inmates Ray, Drake and Brown—who were gathered in Ray's cell—and told them Sergeant Leatherwood was not going to become involved. *Id*. at 119.

At that point, Ray went down to the bottom tier of his housing wing to speak with the inmates about whom Battle was concerned but was assaulted and stabbed and subsequently died from the wounds he sustained in the attack. *See id*. at 119–20, 144. Battle testified that he, Drake and Brown were then stabbed when they tried to help Ray. *Id*. at 120.[2] Battle claims Sergeant

---

[2] The estate of Christian D. Ray filed an identical action based on the July 15, 2017 incident at LCI. *Ray v. SCDC et al*., 9:19-cv-147-TMC (D.S.C. filed Jan. 17, 2019). The state claims asserted in *Ray* remain pending before this court. *See id*. at Dkt. No. 86 (D.S.C. Apr. 20, 2021). Likewise, Darnell Brown and Ronnie Drake filed identical actions based on the same incident at LCI; both actions have been dismissed upon settlement of the parties. *See Brown v. SCDC et al*., 2:19-cv-572-JD, at Dkt. No. 192 (D.S.C. June 30, 2021); *Drake v. SCDC et al*., 2:19-cv-574-JD, at Dkt. No. 195 (D.S.C. June 30, 2021).

4

Leatherwood was in the sallyport when the attacks occurred, *id*. at 115–17,[3] having left the doors between the wings and the sallyport unlocked, *id*. at 198. Battle contends that "his attackers were part of a larger [group of] inmates who came onto his wing from the other wing" through the doors that Sergeant Leatherwood allegedly left unlocked. (ECF No. 1-1 at 9). Battle was eventually taken to Tuomey Hospital in Sumter, South Carolina, for treatment of the wounds he received during the attack and released back to LCI the following day. (ECF Nos. 1-1 at 9; 54-3 at 3).

Unfortunately, this kind of incident is not a rarity at LCI, which has a well-documented history of inmate-on-inmate violence. Battle's evidence includes a report drafted by Security and Detention Consultant Tim Roth (the "Roth Report") detailing the effects of understaffing at correctional institutions run by SCDC, including LCI. (ECF No. 51-6). The Roth Report indicates that "[s]ecurity staffing levels have been a critical concern at Lee for an extended period[,]" and includes data reflecting that security staffing was at a low point in 2017 at the time of the assault on Battle. *Id*. at 100. According to the Roth Report, the most substantial staffing shortage was in "front-line positions" that have the most frequent contact with the inmates, *id*. at 101, and, as of March 2018, the majority of the front-line staff at LCI had been there for less than one year, *id*. at 107. The Roth Report suggests that insufficient staffing was a contributing factor to both SCDC's inability to control contraband, including weapons, and to the number of inmate-on-inmate assaults at LCI. *Id.* at 104–105. In fact, according to the Roth Report, at LCI alone there were inmate-on-inmate assaults and stabbings that resulted in the death of an inmate in 2009, 2016, 2017, and 2018—"an extremely high number of fatal incidents for any facility." *Id*.

### B. Procedure

---

[3] According to Sergeant Leatherwood, the attacks began while she was in the bathroom located in the sallyport. (ECF No. 51-1 at 7).

Plaintiff filed this action on May 10, 2019, in the Lee County Court of Common Pleas (ECF No. 1-1), and Defendants removed this action to federal court in June 2019 (ECF No. 1). The complaint originally included four causes of action against four defendants; however, as noted, only two defendants—Sergeant Leatherwood and SCDC—remain in this action. Against Sergeant Leatherwood, Battle asserts a cause of action pursuant to § 1983, claiming that Sergeant Leatherwood acted with deliberate indifference to his constitutional rights in, among other things, "allowing uncontrolled violence"; "failing to comply with SCDC policies and procedures regarding correctional officers remaining on their assigned wings"; "failing to provide protection and security for [Battle]"; "allowing inmate[s] to have dangerous weapons"; and "failing to conduct sufficient and appropriate inspections of the dorms to prevent inmates from obtaining weapons." (ECF No. 1-1 at 12). Battle seeks an award of actual, consequential, and punitive damages against Sergeant Leatherwood. *Id*. at 13. Against SCDC, Battle asserts a claim pursuant to SCTCA, *see* S.C. Code Ann. §§ 15-78-10 to 15-78-220, alleging that "SCDC is liable for the acts of its employees, as they were acting within the course and scope of their official duties pursuant to [the SCTCA,]" and further that SCDC acted in a negligent, grossly negligent, reckless, willful and wanton manner" by committing the same acts and omissions alleged in the complaint to have been committed by Sergeant Leatherwood. (ECF No. 1-1 at 15–16). Battle seeks actual and consequential damages from SCDC.[4]

---

[4] Battle's complaint also seeks injunctive relief against Sergeant Leatherwood and SCDC, alleging that Battle "is at risk to be attacked and injured and possibly killed" and that "without Court intervention by way of injunctive relief the likelihood of repeated incidents will occur and monetary compensation cannot replace the loss of life." (ECF No. 1-1 at 11, 17). In considering Defendants' argument that Battle's claim for injunctive relief is legally insufficient, the magistrate judge noted that "[Battle] does not acknowledge Defendants' argument that his claim for injunctive relief fails as a matter of law" nor does he even mention the claim for injunctive relief in his opposition brief. (ECF No. 61 at 18). The magistrate judge, therefore, concluded that Battle had "conceded to the dismissal of this claim" and recommended that the court dismiss the claim for

In December 2020, Defendants SCDC and Sergeant Leatherwood filed a motion for summary judgment. (ECF No. 45). Plaintiff filed a response in opposition to summary judgment (ECF Nos. 51; 55), and Defendants filed a reply (ECF No. 54). On April 16, 2021, the magistrate judge issued the Report recommending that the court grant Defendants' motion for summary judgment for failure to exhaust administrative remedies as to the federal claims and remand to state court the state law claims. (ECF No. 61 at 37). In the alternative, the magistrate judge recommended that the court (1) deny Defendants' motion for summary judgment as to the § 1983 deliberate indifference claim against Leatherwood; and (2) deny Defendants' motion for summary judgment as to the state law claim for gross negligence against SCDC. *Id*. Leatherwood and SCDC filed objections to the Report, (ECF No. 65), to which Plaintiff replied (ECF No. 68). Plaintiff likewise filed objections to the Report, (ECF No. 66), to which Leatherwood and SCDC replied, (ECF No. 67). After carefully reviewing the record and the submissions of the parties, the court concludes a hearing is unnecessary to decide this matter. Accordingly, this matter is ripe for the court's review.

## II. Legal Standards

### A. Report of the Magistrate Judge

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the

---

injunctive relief on that basis. *Id.* at 18–19. Battle did not object to this portion of the Report. Finding no clear error, the court adopts this portion of the Report and dismisses the claim for injunctive relief.

recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

### B. Summary Judgment

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

### III. Discussion

### A. Failure to Exhaust

### 1. Legal Principles

SCDC and Sergeant Leatherwood contend that Plaintiff failed to exhaust his administrative remedies before commencing this action in contravention of the Prison Litigation Reform Act ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review, which means "using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006) (internal quotation marks and citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*.

A prisoner need not exhaust the applicable administrative remedies, however, if they are unavailable to him. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a single dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. And third, an administrative grievance procedure is

unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Failure-to-exhaust administrative remedies "is an affirmative defense that the defendant must plead." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). Although Defendants bear the burden of proving the affirmative defense that Plaintiff failed to exhaust available administrative remedies, once they have done so the burden of proof shifts to Plaintiff to show, by a preponderance of the evidence, that the administrative remedies were unavailable to him through no fault of his own. *Smith v. Phillips*, Civ. A. No. 1:14-cv-03161-RBH, 2016 WL 385398, at *2–3 (D.S.C. Feb. 2, 2016) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Absent such evidence that the administrative remedy was unavailable, failure to exhaust the administrative remedies will bar actions filed under federal law." *Brown v. Ramos*, No. 5:20-cv-0052-RMG, 2020 WL 6305397, at *3 (D.S.C. Oct. 28, 2020) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).

The specific administrative remedies to be exhausted are dictated by the prison, not the PLRA. *See Jones*, 549 U.S. at 218. In this case, Plaintiff was required to comply with the SCDC's grievance procedures before bringing this action. As explained in detail by the magistrate judge, the SCDC's grievance procedure is set forth in SCDC Policy GA-01.12 and typically requires an inmate seeking to complain of prison conditions first to attempt informal resolution by submitting a Request to Staff ("RTS") form within eight working days of the incident in question. (ECF No. 51-9 at 7). Under certain circumstances—for example, if the incident in question allegedly involved criminal activity—an attempt at informal resolution is not required. *Id*. When informal resolution is not required, an SCDC inmate must file a Step 1 grievance within five days of the alleged criminal activity. *Id*. The SCDC grievance policy requires that a grievance alleging criminal activity be forwarded immediately to the "Chief/designee, Inmate Grievance Branch"

(IGB) for a determination of whether a criminal investigation is required. *Id*. at 10–11. If it is determined that a criminal investigation is not required, then the standard grievance procedures apply, meaning that the Warden must respond to the Step 1 grievance within 45 days. *Id*. at 9, 11. The inmate may appeal the Warden's response by filing a Step 2 grievance within five days of receiving the response. *Id*. at 9. The SCDC's response to the Step 2 grievance "is considered the agency's final determination, which the inmate may appeal to the South Carolina Administrative Law Court." *Brown*, 2020 WL 6305397, at *3.

## 2. Findings and Conclusions of Magistrate Judge

The magistrate judge found Battle did not file an informal RTS form with respect to this incident but noted the parties agree that, because Plaintiff's complaint involves allegations of criminal assault, the SCDC grievance policy did not require Battle to attempt informal resolution. (ECF No. 61 at 13, 13 n.5); *see also* (ECF Nos. 51 at 28; 54 at 10). Instead, Battle was required to file a Step 1 grievance within five days of the alleged criminal activity which occurred on July 15, 2017. (ECF No. 51-9 at 7). According to Battle, he filed a step 1 grievance regarding the July 15, 2017 incident on March 14, 2018, which was rejected as untimely. (ECF Nos. 54-1 at 163; 54-2 at 6; 55 at 2).[5]  The magistrate judge agreed that Battle eventually filed a Step 1 grievance but noted that it was not filed within the time prescribed by the SCDC grievance policy. (ECF No. 61 at 13–14). The magistrate judge then found no evidence suggesting that Battle ever filed a Step 2 grievance. *Id*. at 13. Therefore, the magistrate judge concluded that Battle did not exhaust his administrative remedies and that his claims could survive summary judgment only if there is "a

---

[5] The magistrate judge noted that although the record does not contain a copy of Battle's Step 1 grievance, Defendant agreed Battle had filed a Step 1 grievance. (ECF No. 61 at 13).

genuine issue of material fact as to whether the grievance process was unavailable to him." *Id*. at 14.

In arguing that the SCDC grievance procedure was unavailable to him, Battle submitted an affidavit stating that he was unable to file a Step 1 grievance after the assault because he "was transported to the hospital." (ECF No 55 at 2). The record reflects, however, that Battle returned from the hospital the following day on July 16, 2017. (ECF No. 54-3 at 3). Battle claims that, upon his return from the hospital, he "made several attempts to receive grievance forms however they were never made available to [him]." (ECF No. 55 at 2). However, it is unclear what actions Battle took that constituted "attempts" to obtain a Step 1 grievance form; Battle provided no further elaboration in either his deposition testimony or his subsequent affidavit. In March 2018, after he had been transferred out of LCI, Battle finally filed a Step 1 grievance. *Id*. The Step 1 grievance, Battle indicated, was denied as untimely. (ECF Nos. 54-1 at 163; 54-2 at 6). As for his failure to file a Step 2 grievance, Battle indicated he "didn't know what to do after" his Step 1 grievance was denied. (ECF No. 54-1 at 98). Battle complains that he "was never provided a Step 2 grievance after [his] Step 1" was denied and "no Step 2 grievance forms were readily available." (ECF No. 55 at 3).

The magistrate judge determined that, "[e]ven if the Court excused the untimely filing of [the Step 1] grievance, [Battle] still failed to submit a Step 2 grievance." (ECF No. 61 at 15). The magistrate judge found the record devoid of any evidence that Battle "ever asked for a Step 2 grievance form" or that such forms were "withheld from [him]." *Id*. Likewise, the magistrate judge could not find any evidence that SCDC officials were "unable to or consistently unwilling to provide any relief" with respect to the grievance process. *Id*. at 16 (internal quotation marks omitted). Accordingly, the magistrate judge concluded that Battle "has not met his burden to

produce evidence that his administrative remedies were unavailable for any of the reasons recognized in *Ross* or controlling Fourth Circuit precedent" and, therefore, that Battle's "federal claims should be dismissed for failure to exhaust." *Id*.

### 3. Objections to the Report

In his objections, Battle contends, as he did before the magistrate judge, that there is sufficient evidence in the record to create a genuine issue of material fact as to whether the SCDC grievance procedure was available to him. (ECF No. 66 at 6). Battle argues "it is sufficient that [he] asked on multiple occasions to be provided the appropriate grievance forms, which he was unable to retrieve by himself." *Id*. at 7. Battle highlights certain evidence that, in his view, compels the denial of summary judgment for failure to exhaust. Primarily, Battle points to the fact that he was admitted to the hospital immediately after the attack and then, after being returned to LCI, was "housed in a unit where he was not provided access" to the grievance process. *Id*. at 8.

The court overrules Battle's objection. As an initial matter, Battle's objection is premised on facts not before the court. There is no evidence, for example, that Battle "asked on multiple occasions" for the grievance forms. Rather, Battle's affidavit states only that he "made several attempts" to obtain grievance forms after returning from the hospital. (ECF No. 55 at 2). There is simply nothing in the record from which the court can infer that Battle asked prison officials for Step 1 forms or even communicated with them about the grievance process in any way. Likewise, the court finds no basis in the record for concluding that Battle was housed in a unit after his brief hospital stay which afforded him no access to the grievance process. To sustain this objection, the court would have to engage in undue speculation.

More importantly, however, Battle's objection fails to address the basis for the magistrate judge's recommendation—that, even assuming the untimeliness of Battle's Step 1 grievance could

be excused, "there are no facts indicating [Battle] was prevented, through no fault of his own, from obtaining a Step 2 grievance form." (ECF No. 61 at 15). In his objection, Battle merely repeats in passing the argument presented to and rejected by the magistrate judge that he was never provided a Step 2 grievance form. (ECF No. 66 at 7). The only evidence supporting this generalized argument is a statement in Battle's affidavit that he "was never provided a Step 2 grievance after [his] Step 1 and no Step 2 grievance forms were readily available to [him]." (ECF No. 55 at 3). The magistrate judge specifically addressed this evidence:

> Upon review, the record does not specify how SCDC inmates obtain Step 2 grievance forms, and Plaintiff does not claim he ever asked any SCDC officials for this form. While the grievance forms may not have been "readily available," this does not necessarily mean that the forms were withheld from inmates when requested. The record does not indicate Plaintiff ever asked for a Step 2 grievance form or suggest that this form was in some way withheld from Plaintiff.

(ECF No. 61 at 15). Accordingly, the magistrate judge concluded Battle did not meet his burden of producing evidence "that SCDC officials were unable to or consistently unwilling to provide any relief to [him] with respect to the grievance process" or that "his administrative remedies were unavailable for any of the [other] reasons recognized in *Ross* or controlling Fourth Circuit precedent." *Id.* at 16 (internal quotation marks omitted). The court agrees with the magistrate judge's analysis and is unable to conclude without undue speculation that the remedies of the SCDC grievance process were unavailable to Battle. The court adopts the exhaustion analysis set forth in the Report and accepts the recommendation of the magistrate judge that Battle's § 1983 claims be dismissed for failure to exhaust administrative remedies.

### B. Merits of Battle's § 1983 claim

Out of an abundance of caution, the magistrate judge also addressed Battle's § 1983 claim on the merits. Although the court, as explained above, agrees with the magistrate judge's

recommendation to dismiss Battle's federal claim for failure to exhaust available administrative remedies, the court, exercising the same caution, will briefly address the magistrate judge's alternative conclusions and recommendations as to the § 1983 claim.

### 1. Report's Findings and Conclusions regarding the 11th and 14th Amendments

First, the magistrate judge concluded that the Eleventh Amendment bars Battle's § 1983 claim for monetary damages against Sergeant Leatherwood in her official capacity and, accordingly, recommended that the court grant summary judgment as to that claim. *Id*. at 20. The magistrate judge noted, on the other hand, that Eleventh Amendment immunity did not shield SCDC from Battle's *state law* tort claims "because SCDC voluntarily removed this case to federal court and South Carolina has consented to suit for tort claims filed against it in state court." *Id*. Neither Battle nor Defendants objected to these conclusions and recommendations.

Second, the magistrate judge determined that Battle's § 1983 claim against Sergeant Leatherwood in her individual capacity for deliberate indifference and failure to protect Battle "implicate the Eighth Amendment's proscription against cruel and unusual punishment, not the Fourteenth Amendment's requirement of due process" given that Battle was a convicted SCDC inmate at the time of the incident in question. *Id*. at 21. Therefore, the magistrate judge recommended the court grant summary judgment on Battle's § 1983 claims to the extent they assert that Sergeant Leatherwood violated his Fourteenth Amendment rights. *Id*. at 22. No objections were lodged with respect to this conclusion either.

After a careful review of the foregoing conclusions and recommendations in the Report, the applicable law, and the record in this case, the court finds no clear error and adopts the magistrate judge's recommendations that the court (1) grant summary judgment as to Battle's § 1983 claims for monetary damages brought against Sergeant Leatherwood in her official

capacity and (2) grant summary judgment on Battle's § 1983 claim to the extent it asserts a violation of his Fourteenth Amendment rights.

### 2. Report's Disputed Findings and Conclusions regarding Battle's § 1983 Eighth Amendment Failure to Protect Claim Against Sgt. Leatherwood

The court now turns to Battle's Eighth Amendment failure to protect claim. "The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). The Eighth Amendment, therefore, prohibits officials from "gratuitously allowing the beating . . . of one prisoner by another" which obviously would not serve a "legitimate penological objective" or "square[] with evolving standards of decency." *Farmer*, 511 U.S. at 833 (internal quotation marks, alteration and omitted). Nevertheless, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "A prisoner seeking to prove a violation of the Eighth Amendment must satisfy an objective requirement of showing that the deprivation that he suffered in prison was 'sufficiently serious' and a subjective requirement of showing that the defendant had a 'sufficiently culpable state of mind' . . . so as to ensure that the deprivation qualifies as a *punishment* implicating the Eighth Amendment." *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–301 (1991)). In prison-conditions cases involving an assault of one inmate by another, "that state of mind is one of deliberate indifference to inmate health or safety." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (internal quotation marks omitted). The deliberate indifference standard imposes "a particularly high bar to recovery," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), and "a showing of mere negligence will not meet it," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The accused prison official, therefore, must have "either purposefully caused the harm or acted

with deliberate indifference." *Strickland v. Halsey*, 638 Fed. App'x 179, 184 (4th Cir. 2015) (internal quotation marks omitted). As explained by the Supreme Court, a correctional officer will not be liable for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The magistrate judge concluded that Battle presented sufficient evidence to establish "a genuine issue of material fact regarding whether [Sergeant] Leatherwood knew of and disregarded a substantial risk of harm to [Battle] when she allegedly ordered [Battle] to return to his cell and left the wing with the doors unlocked." (ECF No. 61 at 31). The magistrate judge based this conclusion on Battle's deposition testimony that prior to the attack, he told Sergeant Leatherwood that "something isn't right" which "indicate[d] [Sergeant] Leatherwood had at least an 'inkling that the attack was going to occur.'" *Id.* (quoting *James v. Cartledge*, No. 9:15-cv-0625-TLW-BM, 2016 WL 1448557, at *7 (D.S.C. Mar. 2, 2016), *report & rec. adopted by*, No. 9:15-cv-00625-TLW, 2016 WL 1427381 (D.S.C. Apr. 12, 2016), *aff'd*, 669 Fed. App'x 674 (4th Cir. 2016)).

Sergeant Leatherwood objects to the conclusion that there is any evidence before the court, even when the record is viewed in a light most favorable to Battle, from which a trier of fact could conclude that she was aware of a substantial risk of serious harm to Battle prior to the assault. (ECF No. 65 at 6–10). Sergeant Leatherwood argues there is no evidence that Battle told her he was being threatened or that he was afraid of an attack. *Id.* at 7. Sergeant Leatherwood argues instead that Battle's testimony reflects that he provided no specifics to her, stating only that "something ain't right, I feel uncomfortable . . . that something about to happen . . . ." *Id.* (citing

ECF No. 54-1 at 113). Sergeant Leatherwood points out that Battle testified that he did not tell her about the exchange with his cellmate and that when she specifically asked Battle to explain what he thought was going to happen, he merely responded "something." *Id*. at 7–9. In reply to Sergeant Leatherwood's objections, Battle contends there is a genuine issue of material fact based on evidence showing (1) that "Leatherwood was assigned to monitor two wings at the same time," but "violated post orders (SCDC policies) when she knowingly left [Battle's] wing unattended" even though she recognized that "a lot of things can happen when an officer is absent from a wing, such as fights, robberies of property, beatings and stabbings"; and (2) that "Sergeant Leatherwood knew, from [Battle] telling her, that a fight was about to happen but did not come back onto the wing until after the stabbing had occurred." (ECF No. 68 at 3).

For purposes of this motion, the issue is whether there is evidence that would permit a reasonable trier of fact to conclude that Sergeant Leatherwood was aware of a substantial risk of serious harm before Battle was assaulted. The court concludes Sergeant Leatherwood's objection to the magistrate judge's alternative recommendation that the court deny summary judgment as to the § 1983 claim is well-taken. There is simply nothing in record indicating that Sergeant Leatherwood was made aware of any threats to Battle or of any impending violence prior to the assault on July 15, 2017. In his reply to Sergeant Leatherwood's objections, Battle mischaracterizes the evidence. Battle did not testify that he told Sergeant Leatherwood he felt threatened or feared a fight or an assault. Instead, Battle testified he told her "something ain't right, I feel uncomfortable, like I feel . . . that something about to happen." (ECF No. 54-1 at 113). According to Battle, Sergeant Leatherwood did ask a follow-up question about *what* he thought was going to happen:

    Q. What did you tell Sergeant Leatherwood?

19

A. I told her that something ain't right, I feel uncomfortable, like I feel . . . that something about to happen and *she was like what you think going to happen* and I was like I feel like something about to happen and that's when she just was like, well, if you ain't trying to tell me what about to happen, just go ahead and get back on the wing . . . ain't nothing wrong with you.

Q. Did she ask you why you thought something was going to happen?

A. No, . . . she [did not] ask none of that. She just was like just go back on the wing. . . . [S]he thought I was playing, because that's what . . . most people [do] with the COs . . . .

*Id*. at 113–14 (emphasis added).

Although these facts might be sufficient to establish that Sergeant Leatherwood had an inkling that trouble was afoot in that area of the prison, Battle's testimony falls short of establishing that Sergeant Leatherwood was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that she, in fact, "dr[e]w the inference." *Farmer*, 511 U.S. at 837. "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 Fed. App'x 921, 926 (10th Cir. 2020) (internal quotation marks omitted). Plaintiffs claiming deliberate indifference must show the official in question "possess[ed] enough details about a threat to enable [him] to conclude that it presents a strong likelihood of injury, *not a mere possibility*." *Id*. (emphasis added). Courts have generally concluded, therefore, that an official's awareness of a plaintiff's non-specific fear of harm is insufficient to support a deliberate indifference claim. *See, e.g.*, *id.* (explaining that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm"); *Marbury v. Warden*, 936 F.3d 1227, 1237 (11th Cir. 2019) (*per curiam*) ("[Plaintiff's] statement that another inmate told him another inmate intended to harm him is precisely this type of vague statement that conveys nothing about

the nature of the anticipated risk . . . [and] would not rise to the level of deliberate indifference to a substantial risk."); *Knox v. Doe*, 487 Fed. App'x 725, 728 (3d Cir. 2012) (inmate's statement to prison officials that "I feel it is now best you place me in protected custody due to the serious nature of threats on my life" insufficient to establish officials' deliberate indifference); *Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611, 619 n.15 (11th Cir. 2007) (observing that vague statements that a prisoner has "a problem with another inmate in this compound" are insufficient by themselves to create a genuine issue of fact regarding deliberate indifference to a substantial risk of serious harm); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."); *Irvin v. Owens*, No. 9:10-cv-1336-RMG, 2012 WL 1534787, at * 4 (D.S.C. Apr. 30, 2012) (finding insufficient evidence to create a genuine issue of material fact for deliberate indifference claim where prison officials did not know "of any risk posed to Plaintiff specifically by [the assailant-inmate]"); *Beasley v. Stephens*, No. 10-895-GPM, 2011 WL 2670189, at *3 (S.D. Ill. July 7, 2011) (explaining that "[a] vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect"). The court concludes, therefore, that Battle's testimony, without more, is clearly insufficient to establish Sergeant Leatherwood was subjectively aware of an excessive risk to Battle's health and safety.

This conclusion, however, does not end the court's inquiry as "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. In such cases, "it is not enough that a reasonable officer *would have* found the risk to be obvious" but, instead, "the risk of injury must be so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it."

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotation marks omitted). Accordingly, "[a] plaintiff can make a prima facie case of deliberate indifference by showing that a substantial risk of serious harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Cox*, 828 F.3d at 236 (internal quotation marks and alteration omitted).

Towards that end, Battle submitted the Roth Report to show the chronic and pervasive history of violence at LCI and other SCDC facilities due, at least in part, to insufficient staffing. The magistrate judge, however, considered this evidence and declined to base her alternate recommendation on the pervasive history of violence at LCI summarized in the Roth Report, as she found no evidence indicating Sergeant Leatherwood "knew of the severity of these problems prior to [Battle's] assault." (ECF No. 61 at 32 n.13). The magistrate judge found "no compelling evidence showing that Defendant Leatherwood was exposed to information concerning a longstanding, pervasive, and well-documented risk to inmates, and thus must have known about it." *Id*. (internal quotation marks omitted). Plaintiff did not object to this particular conclusion. The court, having found no evidence suggesting Sergeant Leatherwood was exposed to information concerning a "longstanding, pervasive, well-documented" risk to inmates such that she "must have known" about the risk to Battle, *Farmer*, 511 U.S. at 842 (internal quotation marks omitted), agrees with the magistrate judge's conclusion in this regard.

The court is aware of decisions from courts in this district denying summary judgment on a deliberate indifference/failure to protect claim on the grounds that the Roth Report provided circumstantial evidence that a substantial risk of serious harm was so pervasive and longstanding

that the defendant-officials in question must have known about it. *See, e.g.*, *Stephens v. S.C. Dep't of Corr. et al.*, No. 4:17-cv-3482-JFA, 2021 WL 1040521, at *7 (D.S.C. Mar. 18, 2021); *Crawford v. S.C. Dep't of Corr. et al.*, No. 6:18-cv-2407-DCN, 2020 WL 5835073 (D.S.C. Oct. 1, 2020); *Murray v. S.C. Dep't of Corr.*, No. 6:19-cv-100-RMG, 2020 WL 5948371, at *16 (D.S.C. May 5, 2020), *report & rec. adopted by* 2020 WL 3603782 (D.S.C. July 2, 2020); *Richardson v. S.C. Dep't of Corr.*, No. 6:19-cv-97-RMG-MGB, 2020 WL 4679178, at *16 (D.S.C. May 5, 2020), *report & rec. adopted sub nom. Richardson v. S.C. Dep't of Corr.*, 2020 WL 3529545 (D.S.C. June 30, 2020); *Bartlett v. S.C. Dep't of Corr.*, No. 2:17-cv-3031-RMG, 2020 WL 2499876, at *23 (D.S.C. Feb. 5, 2020), *report & rec. adopted by* 2020 WL 1041638 (D.S.C. Mar. 4, 2020). In these cases, however, the failure-to-protect claim was asserted against the warden or assistant warden of the facility in question who, in his or her capacity as warden, was responsible for the staffing and operation of the facility and was privy to the severity of the ongoing contraband and violence problems. *See, e.g.*, *Bartlett*, 2020 WL 2499876, at *23 (noting "these statistics would have been made available to [Defendant] as Warden of Lieber through, inter alia, incident reports, inspection reports, contraband reports, and management information notes, as well as through his role as being 'responsible for the whole operations of the facility, day-to-day operations'"); *Richardon*, 2020 WL 4679178, at *16 (noting "the Roth Report indicates a substantial risk of serious harm to inmates at McCormick was longstanding, pervasive, and well-documented prior to Plaintiff's October 6, 2017 assault" and that "based on the quarterly contraband reports, these contraband statistics in the Roth Report would have been made available to [Defendant] as Warden of McCormick"); *Murray*, 2020 WL 5948371, at *16 (same). Furthermore, in some of these cases, unlike the instant case, correctional officials had notice prior to the assault that the victim feared for his safety or that an attack on the victim was possible. *See Stephens*, 2021 WL 1040521, at *2

("The attack occurred after SCDC personnel informed Plaintiff that 'someone had threatened to kill him' . . . ."); *Crawford*, 2020 WL 5835073, at * 2 (finding that "[p]rior to the assault, Crawford claims that he requested to move cells based on [a previous assault] and subsequent threats of harm"). Here, there is no indication that Sergeant Leatherwood had any information that violence was imminent, that Battle feared for his safety, or that Sergeant Leatherwood, in her capacity as a front-line correctional officer with no control over staffing or operations, "must have known" about the substantial risk of serious harm to Battle prior to the attack.[6]

In sum, the court is constrained to conclude that Battle failed to come forward with sufficient evidence to survive summary judgment on the failure to protect claim against Sergeant Leatherwood and declines to adopt the magistrate judge's alternate recommendation that Defendants' motion for summary judgment be denied on this claim.[7] *See Ray v. SCDC et al.*, No. 9:19-cv-147-TMC, 2021 WL 1540928, at *8 (D.S.C. Apr. 20, 2021) (granting summary judgment as to deliberate indifference claim on identical evidence).

### C. State Law Claims against SCDC

---

[6] To the extent Battle relies upon expert or investigative reports or LCI post orders to show that Sergeant Leatherwood "left the wing unattended and abandoned her post," (ECF No. 51 at 2), the court concludes that such evidence may reflect Defendants' purported operational failures but does not establish Sergeant Leatherwood was subjectively aware of an excessive risk to Battle's health and safety.

[7] The magistrate judge also recommended, in the alternative, that the court deny summary judgment on the basis of qualified immunity. (ECF No. 61 at 32–33). The court, "[i]n considering a qualified-immunity defense . . . at the summary judgment stage" must conduct a two-part inquiry, asking "(1) whether the officer violated a federal right and (2) whether that right was clearly established such that the officer was on notice that his actions violated the law." *Jones v. Gross*, 675 Fed. App'x 266, 268 (4th Cir. 2017). The court may address these prongs in any order and need not address both prongs. *Pearson v. Callahan*, 555 U.S. 23, 236–37 (2009). If the officer "did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there." *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007). In light of the court's conclusion that Plaintiff failed to establish Sergeant Leatherwood was deliberately indifferent to a substantial risk of serious harm in violation of Battle's constitutional rights, the court need not address the "clearly established" prong of the qualified immunity analysis.

## 1. Supplemental Jurisdiction

The magistrate judge recommended that if the court dismisses Battle's federal claims for failure to exhaust administrative remedies, the court then decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over Battle's state law claims against SCDC. (ECF No. 61 at 17). Section 1367 affords a federal court the discretion to retain supplemental jurisdiction over state law claims even where the court has disposed of all claims with original federal jurisdiction. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether . . . to retain jurisdiction over state claims when all Federal Claims have been extinguished."). The Supreme Court has outlined four factors to guide the exercise of that discretion: judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Additionally, district courts in this circuit have also considered "(1) whether the claim involves straightforward application of well-defined case law," *Caughman v. S.C. Dep't of Motor Vehicles*, No. 3:09-503-JFA-PJG, 2010 WL 348375, at *2 (D.S.C. Jan. 26, 2010); (2) whether the parties have completed discovery, *id.*; (3) the length of time the case has been pending in federal court, *Varner v. SERCO, Inc*., No. 2:16-cv-2340-DCN, 2018 WL 1305426, at *4 (D.S.C. Mar. 12, 2018); and (4) whether the complaint was filed in federal court, *id*.

The magistrate judge determined that an analysis of whether Battle satisfied state law exhaustion requirements "would be more appropriately undertaken by the state court in the first instance," citing to decisions by courts in this district remanding state law claims where the federal

claims had been dismissed for failure to exhaust administrative remedies. (ECF No. 61 at 17 (citing *Simpson v. S.C. Dep't of Corr.*, No. 2:17-CV-3031-RMG, 2019 WL 4254228, at *5 (D.S.C. Sept. 9, 2019); *Johnson v. Ozmint*, No. 9:08-CV-0431-PMD-BM, 2009 WL 252152, at *6 (D.S.C. Feb. 2, 2009))). Accordingly, the magistrate judge recommended that Battle's state law claims be remanded to state court. (ECF No. 61 at 17).

Defendants object to this recommendation, arguing that the court should exercise its supplemental jurisdiction over the state law claims because (1) this case has been pending in federal court for a lengthy period of time; (2) if the court "were to return the balance of this litigation to state court, the state court would need to learn facts and issues with which this court is already familiar"; and (3) the claims to be remanded involve the straightforward application of well-established law. (ECF No. 65 at 17).[8]

The court concludes that it should exercise its supplemental jurisdiction over Battle's state law claims. This case has been pending in federal court since June 2019. (ECF No. 1). Depositions have been taken and it appears that discovery is essentially complete. If the court declined to exercise supplemental jurisdiction and remanded the state law claims, the state court would need to familiarize itself with a voluminous record with which this court is already well-acquainted. Additionally, the remaining claims appear to involve the straightforward application of well-established law. Therefore, the court concludes it is appropriate to exercise supplemental jurisdiction over Battle's claims arising under state law.

### 2. S.C. Tort Claims Act

---

[8] Although Battle did not object to this portion of the Report, he filed a reply to Defendants' objections in which he agreed with Defendants that the court should exercise supplemental jurisdiction over the state law claims even if the federal claims are dismissed. (ECF No. 68 at 8–9).

Defendants seek summary judgment as to Battle's claim against SCDC alleging gross negligence under the South Carolina Tort Claims Act. (ECF No. 45-1 at 19). The magistrate judge recommended that, if the court reached the merits of Defendants' motion for summary judgment as to Battle's gross negligence claim against SCDC, the court deny summary judgment. (ECF No. 61 at 36).

"The South Carolina Tort Claims Act, which provides the exclusive remedy in tort against [the] Department, is a limited waiver of governmental immunity." *Steinke v. S.C. Dep't of Lab., Licensing & Regulation*, 336 S.C. 373, 393 (1999). The South Carolina Tort Claims Act provides that the State, its agencies, political subdivisions, and other governmental entities are "liable for their torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions within the Act. S.C. Code Ann. § 15-78-40. Section 15-78-60 sets out "exceptions" to this waiver of sovereign immunity. "These exceptions act as limitations on the liability of a governmental entity." *Jinks v. Richland Cty.*, 355 S.C. 341, 344 (2003); *see also* S.C. Code Ann § 15-78-40 (2005). One such exception, which applies in this case, provides that "[t]he governmental entity is not liable for a loss resulting from . . . responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. § 15-78-60(25). "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Etheredge v. Richland Sch. Dist. 1*, 341 S.C. 307, 310 (2000). It is the failure to exercise slight care. *Jinks*, 355 S.C. at 345. Gross negligence is a mixed question of law and fact and should be presented to

the jury unless the evidence supports only one reasonable inference. *Bass v. S.C. Dep't of Soc. Servs.*, 414 S.C. 558, 571 (2015).

The magistrate judge concluded that summary judgment should be denied on the same basis that the Report recommended denying summary judgment on the deliberate indifference claim against Sergeant Leatherwood. (ECF No. 61 at 35). Significantly, the magistrate judge noted that the record reflected LCI "was suffering a severe staff shortage at the time of [Battle's] assault" and that "staffing levels have been a critical concern at [LCI] for an extended period." *Id*. (internal quotation marks omitted). Furthermore, the magistrate judge highlighted evidence that the ongoing staff shortage "correlate[ed] with high incidents of assaults and contraband."[9] *Id*. In light of this evidence, the magistrate judge concluded "the Roth Report demonstrates that [LCI] was experiencing a severe staff shortage, contraband issues, and higher than acceptable rates of assault prior to the incident" and that "there is a genuine issue of material fact as to whether it was reasonably foreseeable that a severe staff shortage, combined with high incidents of contraband and assault, would probably result in an inmate being attacked by other inmates." *Id*. at 36. Thus, "[b]ecause questions of fact exist as to whether SCDC failed to give the care necessary under the

---

[9] Most of this evidence is contained in the Roth Report. As explained previously, the magistrate judge determined—and the court agreed—that the information set forth in the Roth Report could not support Battle's deliberate indifference claim against Sergeant Leatherwood individually because there was no evidence that she, as a non-supervisory, front-line officer, "was exposed to any information contained in the Roth Report" or any other evidence of "a longstanding, pervasive, and well-documented risk to inmates." (ECF No 61 at 32 n.13). With respect to the state law claims *against SCDC*, however, the magistrate judge considered evidence of staffing shortages and historical inmate violence, having concluded that "there is at least a question of fact as to whether SCDC supervisory officials would have been aware of the information contained in the Roth Report prior to the assault at issue." *Id*. at 35. Defendants object to consideration of the Roth Report for purposes of the state law claim on the basis that the information contained therein is not sufficiently specific. (ECF No. 65 at 13). The court overrules this objection. Indeed, the court found it appropriate to consider this same evidence for purposes of an identical claim against SCDC in one of the numerous SCDC prison violence cases before the undersigned. *See Ray*, 2021 WL 1540928, at *10.

circumstances alleged in this action and therefore acted in a grossly negligent manner," the magistrate judge recommended that summary judgment be denied with respect to Battle's gross negligence claim against SCDC. *Id*.

First, the court notes that because "deliberate indifference requires a much higher standard of fault than mere or even gross negligence," *A.P. ex. Rel. Bazerman v. Feaver*, No. 04-15645, 2008 WL 3870697, at *12 (11th Cir. Aug. 21, 2008), the court's conclusion that Battle failed to offer sufficient evidence to support his deliberate indifference claim against Sergeant Leatherwood under § 1983 is not dispositive of Defendants' summary judgment motion as to his claim against SCDC under the SCTCA. The court agrees with the magistrate judge that Battle has created a genuine question of fact as to whether SCDC exercised even slight care in protecting his health and safety. As noted previously, Sergeant Leatherwood was the only correctional officer assigned to monitor both wings of Battle's housing unit on the day of the assault and there is evidence that she did not perform walking security checks that day. But, even if she had performed the once-per-hour security checks, at best the inmates in each wing would have been out of their cells and without the presence of a correctional officer for 30 minutes at a time. The evidence showed that the practice of having a single correctional officer handle two wings of a housing unit was a contributing factor to the long history of violence at LCI. Accordingly, the court agrees there is an issue of material fact as to whether it was reasonably foreseeable that a severe staff shortage, combined with high incidents of contraband and assault, would probably result in an inmate being attacked by other inmates. The court concludes that SCDC is not entitled to summary judgment on Battle's gross negligence claim under state law.

### 3. Exhaustion under South Carolina's Administrative Procedures Act

Finally, Defendants seek summary judgment as to Battle's SCTCA claims against SCDC on the basis his failure to exhaust administrative remedies through the grievance process bars his claims under state law. (ECF No. 45-1 at 26-28). The magistrate judge, having recommended the court decline to exercise supplemental jurisdiction over Battle's state law claims, did not address the issue of whether South Carolina law requires exhaustion in these circumstances, observing that "such an analysis would be more appropriately undertaken by the state court in the first instance." (ECF No. 61 at 17).

Defendants object to this portion of the Report, arguing that the question of whether Battle was required by South Carolina law to exhaust administrative remedies before filing an action under SCTCA should be decided by this court as part of its exercise of supplemental jurisdiction. (ECF No. 65 at 14). Defendants argue that the South Carolina Administrative Procedures Act ("SCAPA") imposes these exhaustion requirements. *See* S.C. Code Ann. §§ 1-23-310 to 1-23-400. Specifically, Defendants rely on the following language: "A party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review pursuant to this article . . . ." S.C. Code Ann. § 1-23-380; (ECF No. 65 at 15). In response, Battle argues the SCAPA provision cited by Defendants is not applicable in this case, as he "is not seeking to appeal any rulings made by the [state] administrative process." (ECF No. 68 at 8). Moreover, Battle points out that, unlike the PLRA, the SCTCA does not contain an exhaustion provision. *Id*. at 7.

The court agrees with Battle that, unlike the PLRA, state law does not impose exhaustion requirements to his claims under SCTCA. As noted in Battle's reply to Defendant's objections, the plain language of the SCTCA does not include any provision requiring exhaustion of administrative remedies. *See* S.C. Code Ann. §§ 15-78-10 to 15-78-220. Moreover, the SCTCA

expressly states that any claim filed under the SCTCA is not subject to the SCAPA exhaustion provision. S.C. Code Ann. § 15-78-80(f) ("The handling and disposition of claims filed under this chapter are not subject to the provisions of Article 3, Chapter 23 of Title 1."). Accordingly, the court concludes SCTCA claims are not subject to the provisions of the SCAPA. *See Wilson v. Hampton Cty.*, No. 9:05-cv-1777-PMD, 2005 WL 2877725, at *3–4 (D.S.C. Oct. 31, 2005) (holding that "claim under the SCTCA is not subject to the provisions of the South Carolina Administrative Procedures Act"). Defendants' objection is overruled.

### IV. Conclusion

For the reasons set forth above, the court adopts in part and rejects in part the recommendations set forth in the Report. (ECF No. 61). The court **GRANTS** the motion for summary judgment (ECF No. 45) as to Battle's § 1983 claim against Sergeant Leatherwood in both her individual and official capacities based on Battle's failure to exhaust administrative remedies. ALTERNATIVELY, the court would **GRANT** summary judgment as to Battle's § 1983 claim against Sergeant Leatherwood (1) in her official capacities on the basis that it is barred by the Eleventh Amendment and (2) in her individual capacity on the basis that Battle failed to present sufficient evidence to permit a reasonable trier of fact to conclude that Sergeant Leatherwood was aware of a substantial risk of serious harm before Battle was assaulted.

With respect to Battle's state law claims against SCDC, the court concludes it is appropriate to exercise supplemental jurisdiction over the claims arising under the SCTCA and **DENIES** the motion for summary judgment (ECF No. 45) as to Battle's state law claims.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 14, 2021